UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SARVAR AKHMEDOV,

                Petitioner,                       Case No. 1:26-cv-377

v.                                          Honorable Robert J. Jonker

KRISTI NOEM et al.,

                Respondents.
_____/

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled combined petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for emergency injunctive relief. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus.

### **Discussion**

### I.    **Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this matter and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.17–18.) In an order entered on February 6, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by

Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on February 11, 2026, (ECF No. 5), and Petitioner filed his reply on February 11, 2026, (ECF No. 6).[1]

## II.    Factual Background

Petitioner is a native and citizen of Uzbekistan. (Pet., ECF No. 1, PageID.1; Notice to Appear (NTA), ECF No. 5-1, PageID.93.) According to Petitioner, he applied for admission to the United States on May 1, 2023, at Calexico, California.[2] (NTA, ECF No. 5-1, PageID.93.) The Department of Homeland Security issued a Form I-862, NTA, charging Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner was an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigration or travel document. (Pet., ECF No. 1, PageID.4; NTA, ECF No. 4-1, PageID.46.) Thereafter, Petitioner was released into the United States on humanitarian parole—according to Petitioner. (Pet., ECF No. 1, PageID.4, 7–15.) Respondents indicate only that Petitioner was "released . . . into the interior of the United States." (Resp., ECF No. 5, PageID.75.)

ICE arrested and detained Petitioner during a routine check-in on November 5, 2025.[3] (*Id.*) On December 30, 2025, an Immigration Judge found that Petitioner was removable and Petitioner

---

[1] Petitioner also filed a motion for temporary restraining order on February 25, 2026, asking the Court to, *inter alia*, enjoin Respondents from moving or removing Petitioner from the jurisdiction during the pendency of these proceedings. (ECF No. 8.) Petitioner's counsel reported that Petitioner had already been removed from the Court's district boundaries to a detention facility in Virginia in anticipation of his removal from the United States on February 26, 2026. The Court denied Petitioner's motion. (ECF No. 9.) The parties have not advised the Court regarding Petitioner's present location.

[2] Respondents tell a slightly different version of these events. Respondents state that Petitioner was encountered by U.S. Border Patrol agents at Calexico, California on May 1, 2023. (Form I-213, ECF No. 5-1, PageID.99.) They arrested Petitioner because he had entered the country illegally. (*Id.*)

[3] With regard to parole, any suggestion that Petitioner's parole continued at the time of his November 5, 2025, arrest is suspect. In the petition, Petitioner does not indicate the duration of his

withdrew his applications for asylum and withholding of removal. (Order, ECF No. 5-1, PageID.81.) Petitioner was ordered removed to Uzbekistan. (*Id*., PageID.83.) The Immigration Judge noted that any appeal was due by January 29, 2026, and that both parties had waived appeal. (*Id*., PageID.84.)

Respondents have supplied an Automated Case Information report from the Executive Office for Immigration Review, generated on February 10, 2026, at 11:39 a.m., indicating that no appeal was received for Petitioner's case. (ECF No. 5-1, PageID.86–88.) Petitioner has supplied a Filing Receipt for Appeal dated February 11, 2026, indicating that Petitioner's appeal was filed on February 10, 2026. (ECF No. 6-1, PageID.104–106.) A search of the EOIR Automated Case Information website discloses that Petitioner's appeal was received on February 10, 2026, and is currently pending. *See* https://acis.eoir.justice.gov/en/ (accept terms, enter Petitioner's A-number and nationality, select submit) (last visited Mar. 4, 2026).

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of

---

parole, and even if Respondents did not revoke or otherwise terminate Petitioner's parole, that does not mean that Petitioner remained paroled. The Court notes that parole pursuant to 8 U.S.C. § 1182(d)(5) was typically issued in one-year or two-year periods of time, starting from the date of entry into the United States. See *https*://www.uscis.gov/humanitarian/humanitarian_parole (select "What is Parole?" heading) (last visited Mar. 3, 2026) (stating that "[w]e typically grant parole for no more than 1 year," and "[p]arole ends on the date the parole period expires"). Plaintiff does not claim that Petitioner's parole remained unexpired two and one-half years after it was purportedly granted. Under these circumstances, based on the information presently before the Court, there is no indication that Petitioner remained paroled when he was arrested in November 2025.

the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

**IV.    Statutory Basis for Petitioner's Detention**

According to Respondents, Petitioner's present detention is governed by 8 U.S.C. § 1231. Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Respondents contend that, at the time the petition was filed, the 90-day removal period was running and that it is still running today. Thus, according to Respondent, Petitioner's detention without bond was, and is, mandatory. Petitioner, on the other hand, claims that the removal period has not started to run because his appeal is pending.

The removal period does not begin to run until "[t]he date the order of removal becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). For the purposes of § 1231(a)(1)(B)(i), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B); *see Jusufi v. Chertoff*, No. 07-15450, 2007 WL 4591760, at *4 (E.D. Mich. Dec. 28, 2007) (discussing that a final removal order becomes administratively final when the BIA denies an appeal of it); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021) ("[O]nce the BIA has reviewed [and affirmed] the [removal] order (or the time for seeking the BIA's review has expired), DHS is free to remove the alien *unless* a court issues a stay. That reinforces why Congress included 'administratively' before the word 'final' in the first provision.").

4

Here, Petitioner's 30-day appeal period ran up to and included January 29, 2026. That period expired before Petitioner filed his appeal. The fact that the BIA permits late appeals or reports the appeal as pending does not change the plain language of the statute.  Under the plain language of the statute, the order of removal was administratively final and the removal period had commenced before the petition was filed. Petitioner was subject to mandatory detention under § 1231. Accordingly, Petitioner's request for habeas corpus relief is properly denied.

### Conclusion

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus. (ECF No. 1.)

Dated:    March 9, 2026                          /s/ Robert J. Jonker
                                                 Robert J. Jonker
                                                 United States District Judge